UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:12-CR-3-GFVT-HAI |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| KEVIN TODD ROGERS, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 25), the Court considers reported violations of supervised release conditions by Defendant Kevin Todd Rogers.

Judge Van Tatenhove entered a judgment against Defendant in August 2012 upon a plea of guilty to possessing pseudoephedrine for the purpose of manufacturing methamphetamine, in violation of 21 U.S.C. § 841(c)(2). D.E. 20. Defendant received a sentence of 72 months of imprisonment followed by a three-year term of supervised release. *Id.* at 2-3. In August 2015, Judge Van Tatenhove granted Defendant's motion for a sentence reduction and reduced the term of incarceration to 52 months. D.E. 23. Defendant began his supervised release term on March 25, 2016.

In August 2017, the Probation Office reported that a urine test administered on July 17 had yielded a positive instant result for methamphetamine. D.E. 24. Defendant initially denied use of a controlled substance, but later confessed. *Id*. The Probation Office recommended that no action be taken at that time, and the Court accepted the recommendation. *Id*.

On September 22, 2017, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations.

First, the Report charges a violation of Standard Condition #7, which forbids the purchase, possession, or use of any controlled substance, except as prescribed by a physician. According to the Report,

> On September 1, 2017, the defendant reported to the probation office at approximately 9:00am in order to provide a urine sample for drug screening. From the time of the defendant's arrival until approximately 1:30pm, the defendant was unable to provide a urine sample; however, maintained he would be clean. As a result, a Pharmchek Sweat Patch was applied. The defendant was instructed not to tamper with, or compromise, the sweat patch while wearing the device. On September 8, 2017, the defendant reported back to the probation office at which time the sweat patch was removed, packaged, and sent to Clinical Reference Laboratory for analysis. On September 14, 2017, results were received from Clinical Reference Laboratory indicating a positive result for Methamphetamine.

This is a Grade C violation.

Based on Defendant's use of methamphetamine, Violation #2 charges a violation of the condition that Defendant not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's previous drug conviction, Violation #2 charges Defendant with conduct that would be a federal crime, that is, simple possession of methamphetamine, a Schedule II controlled substance. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance, and is a Grade B supervised release violation.

**I.**

The Court conducted an initial appearance pursuant to Rule 32.1 on October 25, 2017, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a

preliminary hearing. D.E. 29. At the initial appearance, the United States moved for interim detention; Defendant argued for release. *Id*. Based on the heavy § 3143(a) defense burden, the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id*. The parties met for a final hearing on November 2, 2017, but the hearing was continued so the defense could have more time to prepare. D.E. 31.

At the final hearing on November 9, 2017, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 32. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation described in the Report. *Id*. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violation #2, the Grade B violation, under the standard of § 3583(e).

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying judgment in this District. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to possessing pseudoephedrine for the manufacture of methamphetamine. *See* 21 U.S.C. § 841(c)(2). This is a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular

violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-39 (6th Cir. 2007).  Under § 7B1.1, Defendant's admitted conduct concerning possession of a controlled substance would qualify as a Grade B violation.  Given Defendant's Criminal History Category of II (the category at the time of the conviction in this District) and Grade B[1] violation, Defendant's range, under the Revocation Table of Chapter 7, is six to twelve months.

Congress mandates revocation in a case of this nature.  By statute, the Court must revoke Defendant because he possessed a controlled substance.  *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession); *United States v. Metcalfe*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008).

## II.

At the final hearing, the parties presented an agreed "split" sentence.  They recommended three months of incarceration, followed by three months of inpatient drug treatment.  They recommended a total of 18 months of supervised release, the first three of which would be the three months of treatment.  Because Defendant would be confined for six months under this plan, the parties considered it a within-Guidelines sentence.  The parties recommended an additional condition of release, namely that upon release Defendant must seek employment outside his home.

The government argued that such a split sentence was appropriate because Defendant had been making effort to comply with his conditions.  Defendant had been cooperative and available to his probation officer during his period of release.  Aside from his two positive drug screens for methamphetamine, he had been a model supervisee.  The government was willing to take a

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

chance on Defendant and provide a second opportunity for inpatient drug treatment. Defendant had received drug treatment while on pre-trial bond, but had not received treatment while incarcerated.

The government explained the background for Defendant's positive drug screens and the new recommended condition that Defendant pursue employment outside the home. Defendant had been making income by detailing cars at his house. However, people would drive by and tempt him with methamphetamine. He succumbed. Defendant's drug use was not "chronic," but was instigated by people who knew where he was living and working. Thus, the parties argued, a condition requiring Defendant to seek employment outside the home was appropriate.

The government argued that three months of incarceration would be adequate to deter future drug use, and that the inpatient drug treatment could also help Defendant avoid any future violations. Because the treatment would be inpatient, the government considered it a form of confinement, something more onerous than home detention. Thus, the government considered the recommended sentence to be a within-Guidelines sentence of six months. The government specified that there was no justification for a downward variance in this case. The government acknowledged that Defendant had initially been deceptive regarding both drug tests, and highlighted this deception as a reason why a below-Guidelines sentence would not be appropriate.

Defense counsel agreed with the government's description, and emphasized that a split sentence is authorized under Guideline § 7B1.3(c)(2). Defense counsel argued that the sentence would provide adequate punishment and address the needs of the community.

Defendant declined to address the Court.

**III.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range of six to twelve months. The Court has carefully weighed the nature and circumstances of the offense and Defendant's particular history and characteristics. The original offense involved participation in a significant methamphetamine conspiracy in which Defendant provided a necessary ingredient. Defendant's violation conduct overlaps somewhat with the offense conduct because both involve methamphetamine. His methamphetamine use creates the risk that he could slip back into more serious drug-related criminal behavior.

The Court recognizes a need to deter criminal conduct and protect the public from the danger inherent in illicit drug use. Defendant commits a new federal felony and creates a new danger to the public every time he uses an illegal drug.

Regarding the need for education and treatment, the recommended sentence addresses this factor by providing for three months of inpatient drug abuse treatment.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). In this case, the breach of trust was compounded by the fact that Defendant was shown leniency after his first positive drug test. His original sentence was also below the Guidelines. Defendant is warned that this will be his last lenient sentence.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18

U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Here, the maximum is three years, minus any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(h).

The jointly recommended period of supervised release is eighteen months, which is approximately the amount of time remaining on Defendant's original sentence of three years of supervised release. The Court finds eighteen months to be adequate to ensure that Defendant has reaped the benefit of his incarceration and inpatient treatment.

Based on the foregoing, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of both violations;

(2) Revocation with a term of incarceration of three months;

(3) A term of supervised release of eighteen months, the first three of which are to be spent in inpatient substance abuse treatment with a requirement that Defendant successfully complete the treatment. Defendant's supervised release should be under the conditions previously imposed at Docket Entry 20, with the additional condition requiring that, upon release from inpatient treatment, Defendant must seek employment outside the home.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended

decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 13th day of November, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge